# Third District Court of Appeal

## State of Florida

Opinion filed April 25, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-465
Lower Tribunal No. 15-20238
_____

## Homeowners Choice Property and Casualty Insurance Company, Inc.,

Petitioner,

vs.

## Raul Avila and Doxanne Avila,

Respondents.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Cole, Scott & Kissane, P.A., and Kathryn L. Ender and Therese A. Savona, for petitioner.

David B. Pakula, P.A., and David B. Pakula (Pembroke Pines); Perry & Neblett, P.A., and David A. Neblett, James M. Mahaffey III and John A. Wynn, for respondents.

Before SALTER, EMAS and LOGUE, JJ.

PER CURIAM.

**INTRODUCTION**

Homeowners Choice Property and Casualty Insurance Company ("Homeowners Choice") seeks certiorari review of the trial court's order requiring Homeowners Choice to produce certain items from its "claim file" in the underlying coverage dispute. Because we are bound by our existing precedent, including Castle Key Ins. Co. v. Benitez, 124 So. 3d 379 (Fla. 3d DCA 2013), we grant the petition and quash the order under review.

**FACTS**

The underlying dispute arises out of the Avilas' insurance claim for damage caused to their property. The Avilas' homeowner's insurer, Homeowners Choice, made some initial payments following the Avilas' submission of their claim. However, on June 9, 2015, the Avilas' public adjuster sent a letter to Homeowners Choice, contesting the adequacy of the payments made. Homeowners Choice reopened the claim and made an additional payment, which the Avilas allege was still inadequate to cover the damage caused to their property.

Thereafter, the Avilas sued for breach of contract, in addition to alleged statutory violations.[1] After the complaint was filed, the Avilas served a request for production on Homeowners Choice, seeking, *inter alia*, "[a]ny documents relating

---

[1] The court dismissed the statutory violation counts and they are not at issue in this appeal.

to the claim file," "[a]ll statements obtained by you, your attorneys or investigators, regarding any aspect of the subject property and/or subject claim, of Plaintiffs or Defendant, its employees, agents or servants, recorded oral or written . . . ," "[a]ny documents relating to evaluations of the loss," "[a]ny documents relating to any issues of insurance coverage," "[a] copy of all documents that contain or relate to any conclusions of the Defendant's employees, adjusters or agents that did any work or rendered any services for this claim," "[a]ny documents which would reflect the date litigation was anticipated for the subject claim," and "[a]ll claim documents prior to the date litigation was anticipated for the subject claim." In response, Homeowners Choice produced several of the requested items, but also objected to a number of the requests for production, asserting those items were protected by work product privilege and/or a "claims file privilege."

Homeowners Choice contemporaneously filed a privilege log, and the trial court conducted an *in camera* inspection of the disputed items. Despite argument by Homeowners Choice that many of the documents in its claim file were privileged, the trial court ordered some of the documents[2] be produced, finding that

_____

[2] By order of this court, the documents identified in the privilege log and the subset of documents ordered by the trial court to be produced to the Avilas, were filed under seal for our review. Upon this court's review of those documents, it appears that each item ordered by the trial court to be produced was generated or created prior to June 9, 2015, which is the date the Avilas' public adjuster sent a letter to Homeowners Choice, contesting the amount paid on the claim. The documents (or

3

they were not protected by either the work product privilege or a "claims file privilege." This petition followed.

**ANALYSIS**

In Nationwide Ins. Co. of Fla. v. Demmo, 57 So. 3d 982 (Fla. 2d DCA 2011), the Second District considered a case with virtually identical underlying facts. Demmo filed an insurance claim, in 2008, with her insurer, Nationwide, for damage to her home caused by a sinkhole. Id. at 983. Nationwide approved and paid that initial claim. Id. On May 4, 2009, Demmo filed a second claim for water intrusion that she alleged was related to the sinkhole. Id. After investigating, Nationwide denied this second claim. Id.

Demmo filed a first party breach of contract action against Nationwide, and during pretrial discovery, Demmo requested that Nationwide produce documents from its claims file, including claims notes, activity logs, property loss notice information, and property loss notice forms. Id.

Nationwide refused to produce certain of those documents, claiming work product privilege, and filed a privilege log. Id. The trial court held a hearing and granted Demmo's motion to compel, concluding that "any documents created prior to Nationwide's May 28, 2009 denial of Demmo's claim were not work product

portions of documents) ordered to be produced include items entitled "Claims Notes," "Activity Report," "Status Report," "Claim Log," and "Valuation Report."

because they were not prepared in anticipation of litigation," and ordered Nationwide to produce those documents. Id. at 984.

On certiorari review, the Second District quashed the order compelling discovery, finding, of significance, that it was unnecessary for the trial court to have reviewed the disputed documents in an effort to determine which were prepared in anticipation of litigation and which were not. Id. Instead, the Demmo court held:

> [T]he trial court focused on the question of what is and what is not work product with regard to the documents sought. But that is not the determinative issue. Rather, the issue turns on what type of action Demmo has brought. Here she is not pursuing a bad faith claim, but rather seeks relief for breach of contract. "A trial court departs from the essential requirements of the law in compelling disclosure of the contents of an insurer's claim file when the issue of coverage is in dispute and has not been resolved." Seminole Cas. Ins. Co. v. Mastrominas, 6 So. 3d 1256, 1258 (Fla. 2d DCA 2009)).

Id.[3]

This court has followed and cited approvingly to Demmo on several occasions.

---

[3]  At the conclusion of its opinion in Demmo, the Second District included a footnote: "As this court did in Mastrominas, 6 So. 3d at 1258 n. 2, we emphasize that [o]ur opinion should not be read as precluding appropriate discovery to the extent specific materials are discoverable. See [Am. Home. Assur. Co. v.] Vreeland, 973 So. 2d [668], 672 [Fla. 2d DCA 2008)]. Although a claims file is generally not discoverable, to the extent that materials contained therein are relied on at trial, those materials may be discoverable. See Northrup v. Acken, 865 So. 2d 1267, 1271 (Fla. 2004) (holding that materials reasonably expected or intended to be used at trial are subject to discovery)." Demmo, 57 So. 3d at 984 n. 2.

In State Farm Florida Insurance Co. v. Ramirez, 86 So. 3d 1198 (Fla. 3d DCA 2012), this court granted certiorari relief where the trial court compelled the insurer to produce its entire claims file, citing to Demmo for the proposition that "claims file documents are protected from disclosure in a breach of contract action without a bad faith claim and the issue of coverage not yet resolved." Id. Although there was no discussion in Ramirez as to whether the trial court could have made an individualized determination of privilege through an *in camera* review of the disputed documents, the Ramirez court did hold that the petition was "premature" as to a subsequent trial court order directing the insurer to create a privilege log and provide the documents for in camera inspection, citing to Gaton v. Health Coalition, Inc., 774 So. 2d 59 (Fla. 3d DCA 2000).[4] Thus, while this court held in Ramirez that the trial court cannot order production of an entire claims file, it did not appear to reject altogether the proposition that a trial court may order the disputed documents within the claims file be reviewed *in camera* for an individualized determination, at least suggesting that this court may not have fully adopted the Demmo holding.

Nevertheless, and well before our decision in Ramirez, this court has granted certiorari relief under similar circumstances, and in seemingly broad terms. See,

---

[4] In Gaton, 774 So. 2d at 60, which dealt with a claim of trade secret privilege, we held that a certiorari petition was premature where the court's order merely ordered a party to produce requested materials for in camera inspection.

6

e.g., Scottsdale Ins. Co. v. Camara de Comercio Latino-Americana de los Estados Unidos, Inc., 813 So. 2d 250, 251-52 (Fla. 3d DCA 2002) (granting certiorari relief and quashing the trial court's order denying Scottsdale's motion for protective order, holding: "Neither the insured nor the injured third party is entitled to discovery of the claims file in a declaratory action to determine coverage, because the claims file is the insurer's work product"); State Farm Fire and Cas. Co. v. Valido, 662 So. 2d 1012, 1013 (Fla. 3d DCA 1995) (granting certiorari, quashing the trial court's discovery order "in its entirety," and holding that "(a) State Farm's claims files, manuals, guidelines and documents concerning its claims handling procedures were irrelevant to the first party [coverage] dispute" and "(b) the defendant's surveillance photographs, witness statements and repair estimates were protected by the work product privilege").   See also State Farm Fla. Ins. Co. v. Desai, 106 So. 3d 5, 6 (Fla. 3d DCA 2013) (in a declaratory action to determine coverage, the trial court entered a discovery order requiring State Farm to produce claims manuals and/or guidelines relating to certain policy language and to provide a representative to testify as to the claims manual, guidelines, and insurance policy; this court granted certiorari relief and quashed the order, holding that Florida law "prohibits insureds from obtaining discovery into an insurer's claims files and claims handling materials until contract/coverage litigation has been concluded").

Most recently, in <u>Castle Key Ins. Co. v. Benitez</u>, 124 So. 3d 379, 380 (Fla. 3d DCA 2013), this court appeared to adopt fully <u>Demmo</u>'s holding and analysis:

> In considering objections to discovery requests for claims file materials, the "determinative issue" is "what type of action" the insured has brought. <u>Nationwide Ins. Co. of Fla. v. Demmo</u>, 57 So. 3d 982, 984 (Fla. 2d DCA 2011. Where, as here, the insured
>
> > is not pursuing a bad faith claim, but rather seeks relief for breach of contract[,][a] trial court departs from the essential requirements of the law in compelling disclosure of the contents of an insurer's claim file when the issue of coverage is in dispute and has not been resolved.

<u>Id.</u> at 380 (quoting <u>Demmo</u>, 57 So. 3d at 984).

Thus, we granted the petition and quashed the order, holding that "[b]ecause the trial court order at issue directed the production of Castle Key's claims file when the issue of coverage is still in dispute, the order departs from the essential requirements of law." <u>Id.</u>

Again, it appears that the trial court in <u>Castle Key</u> ordered production of the entire claims file, and this court noted, in a footnote, that although the insureds asserted they were not seeking "claims handling material," "case law prohibiting the disclosure of 'claims file' material . . . clearly encompasses items such as notes in the claims file, property loss information, and property loss notice forms, which are all specific to the handling of an individual claim." <u>Id.</u> at 380 n.1. This is fully consistent with the holding in <u>Demmo</u>, which negates any requirement that a trial

8

court review those categories of disputed documents to determine the applicability of privilege.

Finally, in State Farm Mutual Automobile Insurance Co. v. Premier Diagnostic Centers, LLC, 185 So. 3d 575 (Fla. 3d DCA 2016), we granted second-tier certiorari relief to an insurer in three first-party, non-bad-faith cases, where the trial court ordered it "to produce portions of its adjusters' claims files to a medical care provider." Id. at 575. (Emphasis added.) Citing to, *inter alia*, Castle Key, Ramirez and Demmo, we held that "[b]ecause this and other courts have repeatedly held that an insurer's claims file is not discoverable in cases such as this, we find not only that the wrong law was applied below but also that an irreparable departure from the essential requirements of the law resulting in manifest injustice has occurred as well." Id. at 575-76. We quashed the trial court's order, which required State Farm to produce its adjuster's notes.

We do observe, however, that counsel for both parties in this case referred to a "claims file privilege" during the hearing on Homeowners Choice's motion for a protective order. There is no such privilege by that designation in the cited cases or Florida's Rules of Procedure or Evidence Code. Thus, a specifically-articulated document request for "photographs of the alleged property damage" may require either (a) production of such photographs, or (b) disclosure on a privilege log with a specifically-articulated basis for protection from discovery, even if those

9

photographs have been filed with other non-discoverable, claim-related documents in the insurer's "claims file" and coverage remains in dispute. We further observe that the Fourth District adopted a more specific approach to the various types of records that may be in an insurer's claims file in State Farm Florida Insurance Co. v. Aloni, 101 So. 3d 412, 414 (Fla. 4th DCA 2012) (recognizing that an insured may, in a specific case and as to a specific record in an insurer's claims file, establish the necessity/good cause exception to the work product doctrine as provided by Florida Rule of Civil Procedure 1.280(b)(4)).[5]

## **CONCLUSION**

Given our prior precedent, particularly the recent decisions in Ramirez, Castle Key and Premier Diagnostic Centers, by which this panel is bound, we grant the instant petition and quash the trial court's order.

SALTER and EMAS, JJ., concur.

---

[5] In view of the facts recited in Aloni and the record in the present case, however, we decline to certify an express and direct conflict to the Florida Supreme Court under Florida Rule of Appellate Procedure 9.030(a)(2)(A)(vi).

LOGUE, J. (concurring).

I concur in the result reached by the majority opinion but write to emphasize that the law that shields from discovery materials in claims files is not new and it is not based solely on the work product privilege.

The petition under review arises from a first-party litigation where the insureds sued their insurer for damages arising from a breach of the policy because the insurer paid less than the entire amount claimed. The majority opinion grants certiorari and quashes an order requiring the production of adjusters' notes contained in the insurer's claims file. This result is mandated by long-standing precedent of the Florida Supreme Court,[6] by the precedent of this District for nearly half a century,[7] and by numerous decisions by the other Florida district

---

[6] See Allstate Indem. Co. v. Ruiz, 899 So. 2d 1121, 1129 (Fla. 2005) (quoting and approving the language in Fidelity & Casualty Insurance Co. of New York v. Taylor, 525 So. 2d 908, 909 (Fla. 3d DCA 1987), that in "an ordinary 'insured vs. insurer' action brought only under the policy . . . the carrier's claim file is deemed not producible essentially because its contents are not relevant to the only issues involved, those of coverage and damages").

[7] See, e.g., State Farm Mut. Auto. Ins. Co. v. Premier Diagnostic Ctrs., LLC, 185 So. 3d 575, 576 (Fla. 3d DCA 2016); Castle Key Ins. Co. v. Benitez, 124 So. 3d 379 (Fla. 3d DCA 2013); State Farm Fla. Ins. Co. v. Desai, 106 So. 3d 5, 6 (Fla. 3d DCA 2013) (finding well taken the insurer's argument that Florida law "prohibits insureds from obtaining discovery into an insurer's claims files and claims handling materials until contract/coverage litigation has been concluded"); Granada Ins. Co. v. Ricks, 12 So. 3d 276, 277 (Fla. 3d DCA 2009) ("discovery

11

courts of appeal.[8]

In addition to work product, claims files usually contain confidential and proprietary claims-handling materials such as adjuster's notes; reserves placed on the claim; activity logs; underwriting documents; emails and correspondence; documents related to adjusting or denying the claim; business policies; claims handling manuals, policies or guidelines; and more. These claims handling

which concerns only potential issues of bad faith or other purported improprieties in defending [a] claim are wholly impermissible unless and until it is determined that the policy indeed provides coverage"); Gov't Employees Ins. Co. v. Rodriguez, 960 So. 2d 794, 796 (Fla. 3d DCA 2007) (stating that in a lawsuit by a third party against GEICO's insured, "[t]he content of GEICO's internal claims handling procedures is immaterial"); Scottsdale Ins. Co. v. Camara De Comercio Latino–Americana De Los Estados Unidos, Inc., 813 So. 2d 250, 251 (Fla. 3d DCA 2002) ("When the issue of insurance coverage is unresolved and at issue in pending court proceedings, a trial court must not order an insurer to produce its claims files and other work product documents."); Allstate Ins. Co. v. Shupack, 335 So. 2d 620, 621 (Fla. 3d DCA 1976) (issuing certiorari and quashing order requiring production of claims file in potential action for bad faith claims handling until the merits of the uninsured motorist claim had been determined).

[8] See, e.g., State Farm Fla. Ins. Co. v. Aloni, 101 So. 3d 412, 414 (Fla. 4th DCA 2012) ("[W]here the issue of coverage is still unresolved at the time of the insurer's objection to the request for discovery of its claim file, the trial court departs from the essential requirements of law in overruling the insurer's objection."); Nationwide Ins. Co. of Fla. v. Demmo, 57 So. 3d 982, 984 (Fla. 2d DCA 2011) (same); Allstate Ins. Co. v. Swanson, 506 So. 2d 497, 498 (Fla. 5th DCA 1987) ("Until the right of coverage is first established, a plaintiff claiming to be an insured cannot compel disclosure of the insurer's work product and privileged matters in its claims file."); American Bankers Ins. Co. of Fla. v. Wheeler, 711 So. 2d 1347 (Fla. 5th DCA 1998) (holding that in a bad faith action, when the issue of coverage has not been determined, it is a departure from the essential requirements of the law to order disclosure of the insurer's claims file and the insurer's claims handling manuals and materials).

materials, while discoverable in a cause of action alleging the insurer adjusted a claim in bad faith, are not discoverable in a straightforward first-party or third-party claim for damages based upon the policy. As the Supreme Court has explained, these materials "are not relevant to the only issues involved, those of coverage and damages." Allstate Indem. Co. v. Ruiz, 899 So. 2d 1121, 1129 (Fla. 2005). See Gov't Employees Ins. Co. v. Rodriguez, 960 So. 2d 794, 796 (Fla. 3d DCA 2007) (holding in such cases claims files are "immaterial"); State Farm Fire & Cas. Co. v. Valido, 662 So. 2d 1012, 1013 (Fla. 3d DCA 1995) (holding "claim files, manuals, guidelines and documents concerning its claim handling procedures [are] irrelevant to [a] first party dispute") (emphasis added).

Because claims handling materials are not relevant and material in an action by an insured against the insurer for simple damages and breach of contract when a potential bad faith claim is not ripe, and because these materials are confidential and proprietary, an order requiring their production is properly quashed by certiorari. See, e.g., State Farm Mut. Auto. Ins. Co. v. Premier Diagnostic Ctrs., LLC, 185 So. 3d 575, 576 (Fla. 3d DCA 2016); Castle Key Ins. Co. v. Benitez, 124 So. 3d 379, 380 (Fla. 3d DCA 2013); State Farm Fla. Ins. Co. v. Desai, 106 So. 3d 5, 6 (Fla. 3d DCA 2013).